HDM:JKW
F. #2020R01171

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

RAYMOND JOHN PIRRELLO, JR.,
   also known as "Ray John,"
ROBERT CASSINO,
   also known as "Bobby Cassino,"
JOSEPH PASSALAQUA and
JOSEPH RIVERA,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>23-499 (S-1) (KAM)</u>
(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18,
U.S.C., §§ 371, 981(a)(1)(C), 1349, 2
and 3551 <u>et seq.</u>; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>Relevant Entities and Individuals</u>

       1.    Late Stage Management, LLC and its affiliated entities ("Late Stage") managed a series of investment funds and had its principal place of business at 26 Park Street, Montclair, New Jersey. Late Stage's various managed investment funds, which were generally named in a numbered sequenced series, <u>i.e.</u>, Late Stage Investment Fund I LLC, Late Stage Investment Fund II LLC, Late Stage Investment Fund III LLC, <u>et al.</u> (the "Late Stage Funds"), invested in stock issued by privately held companies that, at the time of investment, purportedly anticipated either making an Initial Public Offering ("IPO") or being sold to a larger business in the relatively near term. Late Stage in turn solicited investments in these stocks from individual investors, including investors located in the Eastern District of New York, using a series of

marketing companies based in New Jersey, New York and Florida (the "sales offices"). Late Stage acquired these shares through an affiliate company called Capital Truth Holdings.

2. Prior2IPO was a sales office with its principal place of business in Sparta, New Jersey. Prior2IPO marketed investments in stocks held by the Late Stage Funds through a variety of tactics, including cold-calling individual investors to pitch them on stocks.

3. Pre IPO Marketing, Inc. ("Pre IPO Marketing") was a sales office affiliated with Prior2IPO with its principal place of business in Lindenhurst, New York. Pre IPO Marketing marketed investments in stocks held by the Late Stage Funds through a variety of tactics, including cold-calling individual investors to pitch them on stocks.

4. B4IPO was a sales office affiliated with Prior2IPO with its principal place of business in Westbury, New York. B4IPO marketed investments in stocks held by the Late Stage Funds through a variety of tactics, including cold-calling individual investors to pitch them on stocks.

5. Green Life Farms was a business that used hydroponic growing techniques to grow lettuces and other vegetables, with a principal place of business in Lake Worth, Florida. The Late Stage Funds offered investors the opportunity to purchase Green Life Farms stock.

6. Earth to Energy and its affiliate, American BioCarbon ("Earth to Energy"), operated a business that produced pellets made from sugar cane waste and biochar which could be used as a soil supplement. Its principal place of business was in White Castle, Louisiana. The Late Stage Funds offered investors the opportunity to purchase Earth to Energy stock.

7. The defendant RAYMOND JOHN PIRRELLO, JR., also known as "Ray John," held no official title at Late Stage or any of the sales offices, but worked as a partner to

the leadership of Late Stage and directed the operation of the sales offices, including Prior2IPO. PIRRELLO held the title of "Public Relations Specialist," at Green Life Farms and Earth to Energy. PIRRELLO was also a founder of Green Life Farms and, as of July 2023, held a significant amount of its stock. On or about September 23, 2019, the United States Securities and Exchange Commission barred PIRRELLO from associating with any investment advisor, broker or dealer and from participating in any microcap stock offerings, among other activities.

8. The defendant ROBERT CASSINO, also known as "Bobby Casino," led operations at Pre IPO Marketing, Inc.

9. The defendant JOSEPH PASSALAQUA worked as the Chief Executive Officer of Prior2IPO.

10. The defendant JOSEPH RIVERA led operations at B4IPO.

11. Co-Conspirator #1, an individual whose identity is known to the Grand Jury, was the managing partner of Late Stage.

12. Co-Conspirator #2, an individual whose identity is known to the Grand Jury, was the President of Capital Truth Holdings. As of July 2023, Capital Truth Holdings was the largest shareholder in Green Life Farms, holding over 60% of its outstanding shares. Likewise, as of July 2023, Capital Truth Holdings was the largest single shareholder in Earth to Energy. Co-Conspirator #2 acted as a business partner to Co-Conspirator #1 and the defendant RAYMOND JOHN PIRRELLO, JR.

## II. Relevant Regulatory Principles and Definitions

13. A "security" was, among other things, any note, stock, bond, debenture, evidence of indebtedness, investment contract or participation in any profit-sharing agreement.

14. A "private placement memorandum" ("PPM"), also known as a private offering document and confidential offering memorandum, was a securities disclosure document used in a private offering of securities by a company or investment fund.

15. A "management fee" was a periodic payment based on a fund's assets under management, which was paid by a fund to the fund's investment adviser for advisory and administrative services.

16. "Carried interest" was a share of profits earned by the operators of an investment fund.

## III. The Fraudulent Scheme

17. In or about and between March 2016 and March 2023, the defendants RAYMOND JOHN PIRRELLO, JR., ROBERT CASSINO, JOSEPH PASSALAQUA and JOSEPH RIVERA, together with others, engaged in a scheme to defraud investors and prospective investors in securities offered by Late Stage through material misrepresentations and omissions relating to, among other things, the existence and amount of fees paid by investors in stock offered by Late Stage and the methodology of setting prices for shares of stock offered by Late Stage.

18. Late Stage offered shares of stock obtained by Co-Conspirator #1, through his companies, to investors nationwide. Co-Conspirator #1, Co-Conspirator #2 and the defendant RAYMOND JOHN PIRRELLO, JR. worked together with the network of sales offices, including those led by the defendants ROBERT CASSINO, JOSEPH PASSALAQUA

4

and JOSEPH RIVERA to sell these investments. Typically, Late Stage would publish a list of available stocks, and dictate to the sales offices at what prices these stocks could be sold. PIRRELLO operated one of the largest sales offices, Prior2IPO, alongside PASSALAQUA who served as the Chief Executive Officer of Prior2IPO. PIRRELLO regularly communicated with employees at all the sales offices, including, but not limited to, Prior2IPO, Pre IPO Marketing and B4IPO, through telephone messaging and video calls regarding the stocks that were being offered, the cost at which Late Stage obtained the shares, the price at which the shares could be offered and the pitch language that salespeople could use.

19. Salespeople at the sales offices, including the defendants ROBERT CASSINO, JOSEPH PASSALAQUA and JOSEPH RIVERA, sold investments in Late Stage by using lists of accredited investors and cold-calling them. Several investors and prospective investors contacted by salespeople from the sales offices were located in the Eastern District of New York. Several sales offices selling investments in Late Stage operated in the Eastern District of New York as well.

20. Together with Co-Conspirator #1 and Co-Conspirator #2, the defendant RAYMOND JOHN PIRRELLO, JR. dictated the pitch language that was used by employees at Prior2IPO to market investments in Late Stage. As part of that pitch, PIRRELLO directed the employees to depict the fund as having "no up front fees," and the only fees being a carried interest of 20% of the profits upon the exit of the investment. Investors were therefore led to believe that all their invested capital was used to purchase stock. In reality, a fee ranging from 10-50% of each investment was extracted up front in the form of a markup to the price of the stock and paid to the sales office and Late Stage. The defendants ROBERT CASSINO, JOSEPH

PASSALAQUA and JOSEPH RIVERA were among the salespeople that used the pitch to market investments in the Late State Funds.

21.    For example, marketing presentations created on behalf of Prior2IPO stated: "Our company Prior2IPO was created with the purpose to bring our members the best opportunities in the world without the typical fee structures of the average brokers and advisors. (WE CHARGE YOU ZERO)." Similar statements emphasizing the absence of any fees were included in social media posts issued by Prior2IPO and on Prior2IPO's website.

22.    Marketing presentations for B4IPO similarly stated: "The Funds we work with DO NOT charge any upfront fees with this transaction, the only costs involved are charged on the back end of the membership holdings after there is some sort of liquidity event. At which time, there will be a 20% fee charged on any profitable portion of your membership holdings, after your initial princip[al] is recouped. No other fees will be assessed."

23.    PPMs issued by Late Stage in relation to its various funds stated that during the term of each fund, "the [investors] will not be required to pay to the Fund any management fee," and that Late Stage would receive a "carried interest" equal to twenty percent of any net profits realized by Late Stage at the time the underlying shares or proceeds from the sales of such shares were distributed to investors. The PPMs also stated that Late Stage "may" charge a "mark-up."

24.    In reality, a substantial undisclosed fee was always built into the price at which the stocks were offered to investors, in the form of a markup. For example, in and around December 23, 2020, the defendant RAYMOND JOHN PIRRELLO, JR. communicated via text message to a group of salespeople, including the defendants ROBERT CASSINO, JOSEPH PASSALAQUA and JOSEPH RIVERA, who were promoting Late Stage investments, stating

"Green Life New Pricing $6 cost $3." This meant that the salespeople were to offer stock issued by Green Life Farms to investors and prospective investors at a price of $6, purportedly with "no upfront fee," when, in fact, the share price was only $3, reflecting a 100% markup.

25. On or about February 24, 2021, two months after the message described above, the defendant RAYMOND JOHN PIRRELLO, JR. communicated again via text message with a group of salespeople who were promoting Late Stage investments, including the defendants ROBERT CASSINO, JOSEPH PASSALAQUA and JOSEPH RIVERA, stating in sum and substance that Green Life Farms stock was now to be sold to investors at a price of $15 per share, with a cost to Late Stage of $10, reflecting a 50% markup and an approximately 120% price increase in the stock over a period of two months.

26. Similarly, spreadsheets circulated by the defendant RAYMOND JOHN PIRRELLO, JR. to salespeople who were promoting Late Stage investments reflected consistent markups of all stocks sold via Late Stage ranging from 10% to 100%.

27. The upfront revenue generated by the inclusion of these markups was then used to pay Late Stage and the sales offices, and often divided evenly between the two. In total, between approximately March 2019 and July 2022, sales offices working on behalf of Late Stage raised approximately $528 million from investors and diverted approximately $88.6 million in undisclosed upfront markups.

## COUNT ONE
(Conspiracy to Commit Securities Fraud)

28. The allegations contained in paragraphs one through 27 are realleged and incorporated as if fully set forth in this paragraph.

29. In or about and between March 2016 and March 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RAYMOND JOHN PIRRELLO, JR., also known as "Ray John," ROBERT CASSINO, also known as "Bobby Cassino," JOSEPH PASSALAQUA and JOSEPH RIVERA, together with others, did knowingly and willfully conspire to use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by (i) employing one or more devices, schemes and artifices to defraud; (ii) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon investors and prospective investors in shares of stock offered by Late Stage and the Late Stage Funds, in connection with the purchase and sale of shares of stock offered by Late Stage and the Late Stage Funds, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

30. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants RAYMOND JOHN PIRRELLO, JR., also known as "Ray John," ROBERT CASSINO, also known as "Bobby Cassino," JOSEPH PASSALAQUA and JOSEPH RIVERA, together with others, did commit and cause the commission of, among others, the following:

## OVERT ACTS

(a) On or about December 23, 2020, PIRRELLO sent a message to salespeople, including CASSINO, PASSALAQUA and RIVERA, directing them to sell shares in Green Life Farms for $6 a share.

(b) On or about February 24, 2021, PIRRELLO sent a text message to salespeople, including CASSINO, PASSALAQUA and RIVERA, directing them to sell shares in Green Life Farms for $15 a share.

(c) On or about October 21, 2021, PIRRELLO advised Confidential Source #1, an individual whose identity is known to the Grand Jury, and who was known to PIRRELLO as a prospective purchaser of stock issued by Late Stage, that Late Stage had eliminated up front fees, and that he intentionally "ke[pt] his name out of" Late Stage's business.

(d) On or about March 1, 2022, PIRRELLO, on a recorded telephone call, advised Confidential Source #2, an individual whose identity is known to the Grand Jury, and who was known to PIRRELLO as a prospective purchaser of stock issued by Late Stage, that "Late Stage has never" charged upfront fees in connection with its investments, and that investors are "paying the same price" the fund is paying for shares.

(e) On or about March 2, 2022, Co-Conspirator #1, on a recorded telephone call, advised Confidential Source #2 that Late Stage charges "no upfront fees" and confirmed that the price the fund pays for the stock is the price the investor pays.

(f) On or about March 8, 2022, RIVERA advised Confidential Source #3, an individual whose identity is known to the Grand Jury, and who purported to have an acquaintance interested in investing in Late Stage, that "as far as the clients are concerned, like,

9

there's no upfront fees. There's nothing on the paperwork, there's no markup there or anything. So, yeah, you don't have to worry about that."

(g) On or about March 8, 2022, RIVERA advised Confidential Source #3 and a law enforcement officer posing as a prospective purchaser of stock issued by Late Stage that Late Stage does not charge upfront fees. RIVERA also confirmed that he does not make money on the investment unless the investor makes money.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Commit Wire Fraud)

31. The allegations contained in paragraphs one through 27 are realleged and incorporated as if fully set forth in this paragraph.

32. In or about and between March 2016 and March 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RAYMOND JOHN PIRRELLO, JR., also known as "Ray John," ROBERT CASSINO, also known as "Bobby Cassino," JOSEPH PASSALAQUA and JOSEPH RIVERA, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud investors and prospective investors in shares of stock offered by Late Stage and the Late Stage Funds, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT THREE
(Securities Fraud)

33. The allegations contained in paragraphs one through 27 are realleged and incorporated as though fully set forth in this paragraph.

34. In or about and between March 2016 and March 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RAYMOND JOHN PIRRELLO, JR., also known as "Ray John," ROBERT CASSINO, also known as "Bobby Cassino," JOSEPH PASSALAQUA and JOSEPH RIVERA, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and prospective investors in shares of stock offered by Late Stage and the Late Stage Funds, in connection with the purchase and sale of shares of stock offered by Late Stage and the Late Stage Funds, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

35. The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____s/_____
FOREPERSON

*by Alexandra Smith, Assistant U.S. Attorney*
JOHN J. DURHAM
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

13