MCF

Michael C. Farkas, Esq., PLLC

P: 212.760.8400 • F: 212.760.8403 • E: mfarkas@farkaslawfirm.com

32 Court Street, Suite 408
Brooklyn, New York 11201

546 5th Avenue, 6th Floor
New York, New York 10036

October 5, 2026

Via ECF

Hon. Kiyo A. Matsumoto
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Pirrello, et. al.
23-cr-499

Your Honor:

Please accept this letter as the pre-hearing submission by Defendants Raymond J. Pirrello and Joseph Passalaqua (collectively, "Defendants") in advance of the parties' *Fatico* hearing, scheduled for October 27, 2026.

Defendants have some understanding of the Government's theories relating to Guidelines loss, restitution, and forfeiture, determinations as to which will be considered at the upcoming *Fatico* hearing. Defendants and counsel do not, however, fully comprehend how the Government intends to meet its burdens in each regard, particularly in light of our understanding of how the Late Stage fund entities in this case operated; how the fund's investors received viable securities at fair market prices; how the investors' continuing pre-IPO holdings in companies that have not yet gone public retain inherent value; how a majority of investors earned substantial profits after the companies in which they held share interests went public; and how the values of the holdings that declined in value after their respective IPO liquidation events did so due to market-related causes unrelated to the fraud.

For these reasons, Defendants cannot make affirmative representations to the Court in this pre-hearing stage, and must reserve most of their arguments and potential evidentiary presentations for the *Fatico* hearing and post-hearing submissions. Defendants generally address the issues to be considered below.

**I. Loss calculation under USSG §2B1.1**

Defendants will not recite in detail the various provisions and principles relating to USSG §2B1.1, as we are mindful of the Court's extensive experience with analyzing and calculating loss thereunder.

In the case at bar, while Defendants' acknowledge that material misrepresentations were made to investor victims, to wit: that the fund's sales agents would not "make money"

unless and until the investors "made money," said misrepresentations had no bearing upon the valuation of the pre-IPO investments and cannot form a basis for determining that the investors suffered any losses, actual or intended. Further, because the Government cannot establish that investors paid anything other than fair market value for the securities at issue, the Government likewise cannot prove that the investors suffered any losses properly attributable to Defendants, either for purposes of calculating loss under USSG §2B1.1 or restitution under the Mandatory Victims Restitution Act (18 U.S.C. § 3663A).

Based on our evolving discussions with the Government since Defendants' guilty pleas and continuing through the Defense's investigations thereafter, the Defense believes that the Government's primary loss theory focuses upon the calculation of the total "up front" compensation earned by the fund entities' sales agents. Said theory is based upon the aforementioned misrepresentations to investors, that the agents and their related entities would not earn compensation unless and until the securities being sold to the investors realized a profit. If this is indeed the Government's theory, the Defense disputes that the Government can establish actual or intended loss.

USSG §2B1.1(b)(1) defines "actual loss" as, "the reasonably foreseeable pecuniary harm that resulted from the offense," and "intended loss" as, "the pecuniary harm that the defendant purposely sought to inflict." USSG §2B1.1(b)(1), notes (C)(i) and (ii). It further defines "pecuniary harm" as, "harm that is monetary or that otherwise is readily measurable in money." *Ibid*, note (C)(iii).

Misrepresentations about the nature of compensation do not necessarily amount to pecuniary loss to investors, nor do they indicate pecuniary harm that the defendants purposely sought to inflict. Fraudulent inducement establishes why the investors entered the transactions – it does not, by itself, establish the dollar amounts that they lost. In the instant matter, the Government must detail what (if any) financial consequence that deception caused to investors.

The Defense believes that in a case where the Government cannot establish that the securities at issue were sold at fraudulently inflated prices, and where any subsequent decline in the value of the securities are not attributable to the fraudulent conduct, there can be no determination that loss has occurred. *See, e.g.*, *United States v. Leonard*, 529 F.3d 83, 93 (2d Cir. 2008) ("Although we defer to the district court's determination that the members would not have purchased the investment had they known that 45% of the sales price went toward commissions, this does not, in and of itself, mean that the securities the investors received in exchange for their contributions were entirely without value. After all, the investors did obtain an interest in a company engaged in producing and distributing a motion picture. Accordingly, the district court erred in not deducting from the purchase price the actual value of the instruments." [citations omitted]); *see also*, *United States v. Rutkoske*, 506 F.3d 170, 179 (2d Cir. 2007), citing *United States v. Ebbers,* 458 F.3d 110, 128 (2d Cir. 2006) ("[t]he loss must be the result of the fraud" and "[l]osses from causes other than the fraud must be excluded from the loss calculation"), also citing *United States v. Olis,* 429 F.3d 540, 546 (5th Cir. 2005) ("'there is no loss attributable to a misrepresentation unless and until the truth is subsequently revealed and the price of the stock accordingly declines' and that the portion of a price decline caused by other factors must be excluded from the loss calculation"), also citing *United States v. Zolp,* 479 F.3d 715, 719 (9th Cir. 2007) ("[T]he court must disentangle the underlying value of the stock, inflation of that value due to the fraud, and either inflation or deflation of that value due to unrelated causes.").

Intended loss also cannot be equated with risk of loss or potential loss. Rather, "'intended loss' may fairly be read to encompass a defendant's reasonable expectation of loss." *United States v. Lacey*, 699 F.3d 710, 719 (2d Cir. 2012), *citing United States v. McCoy*, 508 F.3d 74, 79 (1st Cir. 2007). In the instant case, the sales agents and Defendants expected the investors to profit from their investments – a belief that was reasonable based on what they thought to be the fair market valuation of the pre-IPO shares that they were selling and the inherent viability of those securities.

Additionally, this does not appear to be a case where losses exist but are difficult to quantify, which could entitle the Government to propose that Defendants' personal gains be used to calculate Guideline loss. The Defense acknowledges that the Court, "need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information." *United States v. Parris*, 573 F. Supp. 2d 744, 748 (EDNY 2008) citing *United States v. Guang*, 511 F.3d 110, 123 (2d Cir. 2007) (additional citations omitted). *See also* USSG §2B1.1, Application Note 3(B). A defendant's gain cannot be used as an alternative measure of loss, however, unless losses actually exist and cannot be reasonably determined. USSG §2B1.1(b)(1), note (B); *United States v. Bazantes*, 978 F.3d 1227, 1250–51 (11th Cir. 2020) (vacating sentence because the §2B1.1(b)(1) loss enhancement was erroneously applied based on gain even though there was no loss).

## II. Restitution

For similar reasons, Defendants aver that the investor victims did not suffer actual losses attributable to Defendants' conduct. The Defense will reserve further argument until the *Fatico* hearing and post-hearing submissions.

## III. Forfeiture

The Defense anticipates that the Government will present its calculations relating to the proceeds of Defendants' conduct. The Defense will confer with the Government thereafter in an effort to reach agreement prior to the *Fatico* hearing.

Thank you for your consideration.

Very truly yours,

Michael C. Farkas
*Of Counsel*
**Aidala, Bertuna & Kamins, P.C.**
*Counsel for Raymond J. Pirrello*

Christohper D. Adams
Marjan Moussavian
Zachary R. Cimring
**McCarter & English, LLP**
*Counsel for Joseph Passalaqua*